AF Approval _~~~~~ for SCN                    Chief Approval _~~~~~

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 8:20-cr-366-WFJ-SPF

SEBASTIEN VACHON-DESJARDINS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, and the

defendant, Sebastien Vachon-Desjardins, and the attorney for the defendant, Mark

O'Brien, mutually agree as follows:

A.   **Particularized Terms**

1.   <u>Counts Pleading To</u>

The defendant shall enter a plea of guilty to Counts One through Four

of the Indictment. Count One charges the defendant with Conspiracy to Commit

Computer Fraud, in violation of 18 U.S.C. § 371. Count Two charges the defendant

with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. Count

Three charges the defendant with Intentional Damage to a Protected Computer, in

violation of 18 U.S.C. §§ 1030(a)(5)(A), (c)(4)(A)(i)(I), (c)(4)(A)(i)(VI), and

(c)(4)(B)(i). Count Four charges the defendant with Transmitting a Demand in

Relation to Damaging a Protected Computer, in violation of 18 U.S.C. §§

1030(a)(7)(B), (a)(7)(C), (c)(3)(A).

Defendant's Initials   S. V.

2.     Maximum Penalties

Counts One and Four carry a maximum sentence of five (5) years'
imprisonment, a fine of $250,000, a term of supervised release of not more than three
(3) years.  Count Two carries a maximum sentence of twenty (20) years'
imprisonment, a fine of $250,000, a term of supervised release of not more than three
(3) years.  Count Three carries a maximum sentence of ten (10) years' imprisonment,
a fine of $250,000, a term of supervised release of not more than three (3) years. In
addition, Counts One through Four each carry a special assessment of $100 per
felony count.  With respect to certain offenses, the Court shall order the defendant to
make restitution to any victim of the offense(s), and with respect to other offenses,
the Court may order the defendant to make restitution to any victim of the offense(s),
or to the community, as set forth below.

3.     Elements of the Offenses

The defendant acknowledges understanding the nature and elements of
the offenses with which defendant has been charged and to which defendant is
pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | the Defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Three: | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and |

Defendant's Initials __S. V.__          2

|        |                                                                                  |
|--------|----------------------------------------------------------------------------------|
| Four:  | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

The elements of Count Two are:

|       |                                                                                  |
|-------|----------------------------------------------------------------------------------|
| One:  | two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the indictment; and |
| Two:  | the Defendant knew the unlawful purpose of the plan and willfully joined in it.   |

The elements of Count Three are:

|        |                                                                                  |
|--------|----------------------------------------------------------------------------------|
| One:   | the Defendant knowingly transmitted a program, information, a code, or a command to a protected computer without authorization; |
| Two:   | the Defendant intended to access a protected computer without authorization and cause damage; and |
| Three: | the damage resulted in losses of more than $5,000 during a one-year period.       |

The elements of Count Four are:

|        |                                                                                  |
|--------|----------------------------------------------------------------------------------|
| One:   | the defendant transmitted in interstate or foreign commerce any communication containing a demand or request for money or other thing of value in relation to damage to a protected computer; |
| Two:   | the defendant did so with intent to extort money or anything of value from any person; and |
| Three: | Damage to a protected computer was caused to facilitate the extortion.            |

Defendant's Initials _S V._                3

4.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the victim identified in Counts Three and Four of the Indictment.

6.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States

Defendant's Initials  S.V.                    4

will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all

Defendant's Initials  _S.V._          5

relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of

Defendant's Initials __S.V.__                6

defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

      10.   Cooperation - Responsibilities of Parties

      a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

      (1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

      (2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either

Defendant's Initials _S. V._       7

seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers,

Defendant's Initials _S V._          8

documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), 1030(i), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, an order of forfeiture in the amount of at least $21,500,000, which represents the proceeds the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty, as well as approximately 27.65 BTC remaining from the bitcoin previously seized from the defendant's BTC Wallet 3Pxki6pFFKC12YSn8JtDs3ZrEg3pFTHnHd on or about January 27, 2021 (the 27.65 BTC). The United States and the defendant have authorized Canadian authorities to transfer the 27.65 BTC to a wallet owned and controlled by the United

Defendant's Initials $\underline{S \cdot V}$          9

States so that it can be held there, pending a final order of forfeiture in this case.

The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained $21,500,000 as a result of the commission of the offenses and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance

Defendant's Initials ___$S.V.$___          10

of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

Defendant's Initials _C V._         11

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be

Defendant's Initials __S V.__            12

found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

12.   Abandonment of Property - Computer Equipment

The United States of America and defendant hereby agree that any electronic devices and/or computers seized from the defendant and currently in the custody and/or control of the Federal Bureau of Investigation or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 1030(i), and/or that the computer equipment and peripherals constitute evidence, contraband, or fruits of the crime for which he has pled guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the computer equipment and peripherals to the United States of America with the

Defendant's Initials  S. V.                    13

understanding and consent that the Court, upon approval of this agreement, hereby directs the Federal Bureau of Investigation, or other appropriate agency, to cause the electronic devices and/or computer equipment described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that he is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of the following electronic devices and/or computer equipment seized from the defendant's residence on or about January 27, 2021:

        a.     An Apple iPad 7 tablet, SN#F9FZ4A4OMF3V;

        b.     A PlayStation gaming console with remote, a USB thumb drive key and an External Hard Drive;

        c.     An HP Elite Book 8540p Laptop, SN#CND1098TTR;

        d.     A Nintendo Switch gaming console, SN# XAW70005941134, and Docking Port;

        c.     An HD SanDisk 2.5" SSD (Model #SDSSDA-120G) SN#172303A00C98, a Seagate Hard Drive, SN#9VX103EQ, and a USB thumb drive key;

        d.     An HD SanDisk 2.5" SSD (Model #SDSSDA-120G) SN# 174201A011BB and a SanDisk Cruzer USB key;

        e.     An Apple iPhone 12 cellphone, SN#F17DP0K50F04;

Defendant's Initials  S.V.                    14

f.   A Western Digital 320GB Hard Drive (Model# WD3200BPVT)

SN# WX91433C5670;

g.   A Samsung Galaxy A10 cellphone, IMEI # 358099106306541;

h.   An Apple iPad Mini tablet, SN#FZTLTSUNFP84;

i.   An RCA tablet (Model# RCTRCT68);

j.   A GPTEK MP3 player;

k.   An Apple iPhone 7 cellphone, IMEI # 353837087019202;

l.   An Alienware laptop, SN# STJZC0M63;

m.   A custom built Desktop computer, SN#

MCMH5001GNN5011202001035;

n.   A Dell Laptop, Service Tag #JJ54XN1;

o.   A SanDisk USB thumb drive Key;

p.   An Apple iPhone cellphone (Model#A1533), IMEI #

013988007592489;

q.   An Apple Watch;

r.   Seven USB thumb drive keys; and

s.   Yellow/Gray USB thumb drives.

13.   Removal - Consent and Cooperation

The defendant agrees and consents to removal from the United States following completion of the defendant's sentence and agrees to waive the defendant's rights to any and all forms of relief from removal or exclusion. The defendant further agrees to abandon any pending applications for relief from removal or

Defendant's Initials __S.V.__                    15

exclusion, and to cooperate with the Department of Homeland Security during removal proceedings.

**B.    Standard Terms and Conditions**

      1.    Restitution, Special Assessment and Fine

      The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

      On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

      The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _S V._         16

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office

Defendant's Initials _S. V._          17

within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.     Sentencing Recommendations

      It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared

Defendant's Initials $\underline{\ \text{S V.}\ }$       18

by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

       7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

       The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials __S.V.__          19

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

      8.   Middle District of Florida Agreement

      It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

      9.   Filing of Agreement

      This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

      10.   Voluntariness

      The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials _S. V._       20

satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

      11.    <u>Factual Basis</u>

          Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _S V_           21

FACTS

The NetWalker Ransomware was a specific type of malicious software (malware) that was used to compromise and restrict access to a victim's computer network in an effort to extort a ransom. Conspirators used NetWalker not only to encrypt victim data, but also used the malware to steal sensitive data from victims. If a victim did not pay the ransom, conspirators would refuse to decrypt victim data and would publish the sensitive, stolen data online. The stolen data was often published on a dark web website named "the NetWalker Blog," which existed for the primary purpose of facilitating the publication of stolen victim data.

NetWalker operated as ransomware-as-a-service ("RaaS"), featuring Russia-based developers and affiliates who resided all over the world. Under the RaaS model, developers were responsible for creating and updating the ransomware, and making it available to affiliates. Affiliates were responsible for identifying and attacking high-value victims with the ransomware. After a victim paid, developers and affiliates split the ransom. Sebastien Vachon-Desjardins was one of the most prolific NetWalker Ransomware affiliates.

Victim 1 was a company located in Tampa, Florida. On or about April 30, 2020, Vachon-Desjardins gained unauthorized access to Victim 1's network and began surreptitiously elevating his privileges within the network while spreading the ransomware from workstation to workstation. On or about May 1, 2020, Vachon-Desjardins caused a ransom note to be delivered to several of Victim 1's

Defendant's Initials ͡Ɉ.Ѵ˙          22

workstations. The ransom note, which has been recreated in part below, indicated

that Victim 1's network had been compromised by the NetWalker Ransomware.

> Hi! Your files are encrypted by Netwalker . . . If for some
> reason you read this text before the encryption ended, this
> can be understood by the fact that the computer slows
> down, and your heart rate has increased due to the ability
> to turn it off, then we recommend that you move away from
> the computer and accept that you have been compromised.
> Rebooting/shutdown will cause you to lose files without
> the possibility of recovery . . . Our encryption algorithms
> are very strong and your files are very well protected, the
> only way to get your files back is to cooperate with us and
> get the decrypter program. Do not try to recover your files
> without a decrypter program, you may damage them and
> then they will be impossible to recover. For us this is just
> business.

The ransom note also provided Victim 1 with a unique code and the

URL to a website hosted on the dark web ("NetWalker Tor Panel"). To gain access

to the NetWalker Tor Panel, a victim had to enter the unique code provided in the

ransom note. After gaining entrance, each victim was provided with the amount of

ransom demanded in bitcoin and instructions for payment. The ransom demanded of

Victim 1 was $300,000 in bitcoin, which Victim 1 did not pay. Victim 1, however,

estimated having spent approximately $1.2 million to respond to the attack, contain

its damage, and restore operations to normal.

During the course of the investigation, law enforcement identified and

seized copies of the server that operated as the backend, or internal-facing, server of

the NetWalker Tor Panel and the NetWalker Blog. This server contained detailed

Defendant's Initials  S.V.                23

transactional information as to the NetWalker developers and affiliates. The transactional records revealed that during the course of the conspiracy, approximately 100 affiliates had been active, and victims had paid approximately 5,058 bitcoin in ransoms (an approximate total of $40 million USD based on the value of bitcoin at the time of each transaction). These records also tied Vachon-Desjardins to the successful extortion of approximately 1,864 bitcoin in ransoms (an approximate total of $21.5 million USD based on the value of bitcoin at the time of each transaction) from dozens of victim companies across the world, including Victim 1.

Vachon-Desjardins was linked to NetWalker Ransomware attacks in a number of ways, including, but not limited to, the following: (1) his research of NetWalker victims and victim network vulnerabilities; (2) his control of servers that housed hacking tools—including those used to perform reconnaissance, elevate privileges, and steal information from a computer or network—which had been used to perpetrate NetWalker attacks; (3) his operation of accounts responsible for posting stolen victim data on the NetWalker Blog; and (4) his receipt of ransoms paid out by NetWalker victims.

On or about January 27 and 28, 2021, the Royal Canadian Mounted Police executed search warrants at Vachon-Desjardins' home and on safe deposit boxes held by Vachon-Desjardins at National Bank, Gatineau, QC. During these searches, law enforcement seized, among other assets, all bitcoin contained in the defendant's BTC Wallet 3Pxki6pFFKC12YSn8JtDs3ZrEg3pFTHnHd. This seized

Defendant's Initials _____       24

bitcoin was derived primarily from ransom funds paid by victims of

NetWalker Ransomware attacks.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this 23rd day of May , 2022.

ROGER B. HANDBERG
United States Attorney

Sebastien Vachon

Sebastien Vachon-Desjardins
Defendant

Carlton C. Gammons
Assistant United States Attorney
Deputy Chief, Economic Crimes Section

Mark O'Brien, Esquire
Attorney for Defendant

Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

25